UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| PANSEY and DENNIS BOBAY, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-CV-119 RM |
| | ) | |
| WALGREEN COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

OPINION AND ORDER

This matter is before the court on Pansey and Dennis Bobay's motion for relief from the order granting summary judgment to defendant Walgreen Company (document # 38). The Bobays' suit alleged that Walgreens owed them a duty to inform or warn of the risk of injuries that could result from Ms. Bobay taking Gemfibrozil and/or Vytorin with Cyclosporine, and a duty to refrain from filling prescriptions that would interact adversely with the prescribed Cyclosporine previously dispensed to Ms. Bobay. The Bobays contended that Walgreens was negligent because it breached those duties. The court entered judgment for Walgreens on both of the Bobays' claims. The Bobays now move the court to reconsider the order granting summary judgment to Walgreens. For the reasons that follow, the court reconsiders Walgreens' motion for summary judgment as to the plaintiffs' duty to refrain claim and finds in favor of Walgreens on different grounds.

BACKGROUND

Pansey Bobay was prescribed Cyclosporine after treatment for non-Hodgkin's lymphoma in 2004. The prescription was called into the Saddle Creek Road, Omaha, Nebraska Walgreens store on May 8, 2004. The Saddle Creek Road store filled the prescription once before the prescription was transferred to the University of Nebraska Medical Center. Almost a year later, on April 14, 2005, Dr. Mark Hazen called in a Gemfibrozil (Lopid) prescription for Ms. Bobay to the Bluffton, Indiana Walgreens store. The prescription was filled on that date and refilled again in May and June 2005. Dr. Hazen didn't direct that any warnings be provided with these prescriptions. On May 31, 2005, Dr. Hazen called in a prescription for Vytorin for Ms. Bobay to the Bluffton Walgreens store; the prescription was filled that day. Dr. Hazen didn't direct that any warnings be provided with this prescription.

Ms. Bobay used the Bluffton Walgreens pharmacy for the past two decades. Once or twice in the past when she went to drop off a prescription, Walgreens told her it wouldn't fill the prescription until it double checked with the doctor because of concerns about the prescription and her other medications.

The Bobays claim that as a result of taking Cyclosporine with Vytorin and/or Gemfibrozil, Ms. Bobay now suffers from rhabdomyolysis, a condition or disease that results in the destruction of muscle tissue and adversely effects the kidneys. The Bobays assert that Walgreens had a duty to warn Ms. Bobay of potential interactions between these medications. They also assert that Walgreens

had a duty to act as a reasonable pharmacist and to refrain from filling the prescriptions of Vytorin and Gemfibrozil to someone with a history of taking Cyclosporine.

In its earlier order, this court granted the defendant's summary judgment motion as to the duty to warn claim based on the Bobays' apparent concession that Indiana law doesn't recognize a pharmacist's duty to warn where the physician hasn't directed the pharmacist to provide such warning. As to the duty to refrain from filling the prescription, the court granted the defendant's motion for summary judgment because the Bobays didn't provide expert testimony to establish that Walgreens owed the Bobays a duty of reasonable care when filling the prescriptions.

DISCUSSION

The Bobays' primary argument for reconsideration is that the parties had agreed not to engage in discovery and the hiring of experts until the court decided the legal issue of whether Walgreens owed a duty to the Bobays to refrain from filling Ms. Bobay's prescriptions. Walgreens disputes that there was ever such an agreement. The parties' alleged agreement wasn't before the court when it decided Walgreens' motion for summary judgment. The court will not now consider evidence that wasn't properly before it when the opinion was entered. If the Bobays needed discovery on the issue of duty — the issue that was before this

court — they could have requested additional time to respond to Walgreens' motion pursuant to Federal Rule of Civil Procedure 56(f).

The Bobays also raise another argument, though they address it only briefly. They contend that the only issue before the court was whether Walgreens owed a duty to the Bobays to refrain from filling the prescription, so they weren't aware that expert testimony was required. For the reasons that follow, regardless of whether expert testimony was presented, no duty would exist under the circumstances in this case. As a matter of law, Walgreens didn't owe a duty to Ms. Bobay to refrain from filling the prescription or to verify the prescription.

*Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). There is no genuine issue of material fact when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not

defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."' (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

*Walgreens' Summary Judgment Motion*

To recover on a claim of negligence under Indiana law, the plaintiff must prove: "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." Ford Motor Co. v. Rushford, 868 N.E.2d 806, 810 (Ind. 2007). "[W]ithout a duty, there can be no recovery in negligence." Hooks SuperX, Inc. v. McLaughlin, 642 N.E.2d 514, 517 (Ind. 1994) (citation omitted). "Whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law exclusively for the court." Hooks SuperX v. McLaughlin, 642 N.E.2d at 517 (citation omitted). The Bobays allege that Walgreens breached its duty to act as a reasonable pharmacist

by filling Ms. Bobay's prescription for Vytorin and Gemfibrozil, when it knew or should have known Ms. Bobay was taking Cyclosporine.

As the Bobays concede, Indiana doesn't recognize a duty on the pharmacist to warn a patient of the adverse effects of a prescription drug unless the prescribing physician directs the pharmacist to do so. *See* Ingram v. Hook's Drugs, Inc., 476 N.E.2d 881, 887 (Ind. Ct. App. 1985). The court in Ingram v. Hook's Drugs reasoned that physicians, not pharmacists, are in the better position to weigh the potential risks and rewards of particular medications for specific patients. The court explained:

> This individualized treatment is available in the context of a physician-patient relationship which has the benefits of medical history and extensive medical examinations. It is not present, however, in the context of a pharmacist filling a prescription for a retail customer. The injection of a third-party in the form of a pharmacist into the physician-patient relationship could undercut the effectiveness of the ongoing medical treatment. We perceive the better rule to be one which places the duty to warn of the hazards of the drug on the prescribing physician and requires of the pharmacist only that he include those warnings found in the prescription.

Ingram v. Hook's Drugs, 476 N.E.2d at 886-887 (footnote omitted); *see also* Hooks SuperX v. McLaughlin, 642 N.E.2d at 518 (agreeing with the Ingram v. Hook's Drugs decision that the responsibility of warning patients about drug side effects lies with physicians); Allberry v. Parkmor Drug, Inc., 834 N.E.2d 199, 201 (Ind. Ct. App. 2005) (declining to find that the pharmacist had a duty to warn; reaffirming the holding in Ingram v. Hook's Drugs). The Indiana court's decision in Ingram v. Hook's Drugs was "consistent with the majority of other jurisdictions

that have addressed this issue and refused to impose a duty to warn on pharmacists." *See* Allberry v. Parkmor Drug, 834 N.E.2d at 202, and cases cited therein.

Although there is no duty to warn, pharmacists have a duty to cease filling a prescription as written under certain circumstances. Hooks SuperX v. McLaughlin, 642 N.E.2d 514. In Hooks SuperX v. McLaughlin, the issue before the court was whether the pharmacist had a duty to cease refilling a prescription (pending direct and explicit directions from the prescribing physician) for a customer who was refilling the prescription at a rate that indicated the patient was taking the medication more quickly than the doctor had prescribed. Hooks SuperX v. McLaughlin, 642 N.E.2d at 515.

In finding that a duty exists, the court utilized a three-part analysis previously set forth in Webb v. Jarvis, 575 N.E.2d 992, 995 (Ind. 1991): "(1) the relationship between the parties; (2) the foreseeability of the harm; and (3) public policy issues." Hooks SuperX v. McLaughlin, 642 N.E.2d at 517. On the relationship prong, the court found that"[i]t is a matter of common expectation as well as statute that pharmacists possess expertise regarding the dispensing of prescription drugs," id. at 517 (citations omitted), so "the relationship between pharmacist and customer is sufficiently close to justify imposing a duty." Id. As to foreseeability, the court found that it wasn't disputed that "one who consumes sufficient quantities of addictive substances may become addicted to them, and

that such an addiction carries with it certain reasonably foreseeable consequences." Id.

Finally, as to public policy, the court noted that there is a "strong public policy interest in preventing intentional and unintentional drug abuse." Hooks SuperX v. McLaughlin, 642 N.E.2d at 518. The court reasoned that Ingram v. Hook's Drugs wasn't controlling "because it didn't involve the rate at which the customer was consuming drugs" and didn't "address instances where a pharmacist has personal knowledge that a customer is taking medication more quickly than prescribed." Id. at 518-519. The court explained that physicians and pharmacists won't likely become "adversaries if pharmacists are expected to cease refilling prescriptions where the customers are using the drugs much more rapidly than prescribed." Id. at 519. The court further noted that there was little concern over increased health care costs because Hooks had a computerized system that permitted the pharmacist to review the patient's prior prescription history from a particular store. Id. The rate at which the prescription was being filled was already before the pharmacist on the computer screen at the time each prescription was filled. Id.

Having recognized a duty, the court in Hooks SuperX turned to the standard of care, applying the traditional negligence standard. Hooks SuperX v. McLaughlin, 642 N.E.2d at 519 (*citing* Miller v. Griesel, 308 N.E.2d 701, 706 (Ind. 1974)). "[P]harmacists must exercise that degree of care that an ordinarily prudent pharmacist would under the same or similar circumstances." Id. What constitutes

due care will ordinarily be a question of fact. Id. (*citing* Miller v. Griesel, 308 N.E.2d at 707).

This court must determine issues of Indiana law as it believes the highest court of the state would determine them. *See* Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). This court must therefore decide whether an Indiana court would find that pharmacists have a duty to refrain from filling a prescription that is incompatible with medication previously dispensed to the customer at a different store location. Because any such duty is not well-settled, this court turns to the three-part test set forth in Webb v. Jarvis to decide whether a duty exists under the circumstances in this case. *See* NIPSCO v. Sharp, 790 N.E.2d 462, 465 (Ind. 2003) ("[T]he three-part balancing test articulated in Webb[] is a useful tool in determining whether a duty exists, but only in those instances where the element of duty has not already been declared or otherwise articulated."). The parties' relationship is sufficiently close to justify imposing a duty, so the court addresses the foreseeability and public policy factors.

"[I]t is well-established that a duty is imposed only where a reasonably foreseeable victim is injured by reasonably foreseeable harm." Hooks SuperX v. McLaughlin, 642 N.E.2d at 518 (*citing* Webb v. Jarvis, 575 N.E.2d at 997). The court should look to the same considerations analyzed in the context of proximate cause, except that foreseeability for purposes of determining duty is a matter of law for the court. Id. The issue is whether it is reasonably foreseeable to a pharmacist filling a valid prescription that a customer will suffer harm from an

adverse drug interaction with other medications. In the absence of special circumstances placing the pharmacist on notice that the customer is taking other adverse medications, the resulting harm isn't foreseeable.

Unlike in Hooks SuperX v. McLaughlin, the facts in this case don't suggest that Walgreens was aware or even should have been aware that Ms. Bobay was taking Cyclosporine in April or May 2005, so it wasn't reasonably foreseeable that her prescriptions for Gemfibrozil and/or Vytorin would cause an adverse drug interaction with Cyclosporine. *See* Estate of Heck v. Stoffer, 786 N.E.2d 265, 269 (Ind. 2003) (declining to take a narrow view of Webb's foreseeability of harm prong; the court instead reviewed the specific facts in the case and the broad type of victim and harm involved to analyze foreseeability); *see also* Lane v. St. Joseph's Regional Medical Ctr., 817 N.E.2d 266, 271, n. 4 (Ind. Ct. App. 2004) (noting that the decision in Heck v. Stoffer implies that specific facts can be reviewed when determining the reasonably foreseeability component of the duty analysis); Nance v. Holy Cross Counseling Group, 804 N.E.2d 768, 772 n. 1 (Ind. Ct. App. 2004) ("In light of Heck, we consider specific facts when addressing foreseeability under duty."). *But see* Williams v. Cingular Wireless, 809 N.E.2d 473, 477 (Ind. Ct. App. 2004) ("[T]he foreseeability component of duty requires a . . . general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence."); Clark v. Aris, Inc., 890 N.E.2d 760, 764 (Ind. Ct. App. 2008) (same).

On May 8, 2004, a prescription for Cyclosporine was called in for Ms. Bobay to the Saddle Creed Road, Omaha Nebraska Walgreens store. The store filled the prescription once and then it was transferred out to the University of Nebraska Medical Center. Almost a year later, Dr. Hazen called in a Gemfibrozil prescription for Ms. Bobay to the Bluffton Walgreens store. That store filled the prescription three times. Around this same time, Dr. Hazen called in a prescription for Vytorin to the Bluffton Walgreens store. The Bobays contend that Walgreens knew or should have known Ms. Bobay was taking Cyclosporine and so shouldn't have filled the Gemfibrozil and/or Vytorin prescriptions. Despite the Bobays' assertions, nothing in the record could establish that Walgreens knew or should have known that Ms. Bobay was taking Cyclosporine in April/May 2005. *See* United Ass'n of Black Landscapers v. City of Milwaukee, 916 F.2d 1261, 1265 (7th. Cir. 1990) (mere allegations in the complaint are insufficient to create a genuine issue of material fact). The foreseeability factor weighs against imposing a duty in this case.

Public policy also must be considered. Similar to Hooks SuperX v. McLaughlin, the court considers protecting the customer's health and safety, not jeopardizing the physician/patient relationship, and avoiding unnecessary health care costs. Hooks SuperX v. McLaughlin, 642 N.E.2d at 518. A strong public policy in protecting the health and safety of the customer is evidenced by Indiana Code § 25-26-13-16, which states:

(a) A pharmacist shall exercise his professional judgment in the best interest of the patient's health when engaging in the practice of pharmacy.

(b) A pharmacist has a duty to honor all prescriptions from a practitioner or from a physician. . . licensed under the laws of another state. Before honoring a prescription, the pharmacist shall take reasonable steps to determine whether the prescription has been issued in compliance with the laws of the state where it originated. The pharmacist is immune from criminal prosecution or civil liability if he, in good faith, refuses to honor a prescription because, in his professional judgment, the honoring of the prescription would:
. . .
> (2) be against the best interest of the patient;
> . . .
> (4) be contrary to the health and safety of the patient.

This statute empowers pharmacists to exercise their professional judgment to refuse to fill a prescription when doing so is contrary to the health and safety of the patient. It should be noted, though, that the statute merely permits — and doesn't require — a pharmacist to decline to fill a valid prescription and as such, the statute alone doesn't create a duty. Hooks SuperX, Inc. v. McLaughlin, 642 N.E.2d at 518.

Relying on the reasoning in Ingram v. Hook's Drugs, this court finds that the public policy concern of customer safety in this instance isn't paramount to the policy concern of avoiding interference with the physician-patient relationship. As the Ingram court stated, physicians, not pharmacists, are in the better position to weigh the potential risks and rewards of particular medications for specific patients. Ingram v. Hook's Drugs, 476 N.E.2d at 886-887. The hazards of taking multiple prescriptions that might have adverse reactions is generally best

addressed between physician and patient: the physician is familiar with the patient's history and need for the medication, and the physician can continue to monitor the patient on an ongoing basis. Without the benefit of a patient's medical history, the pharmacist is less qualified to determine the propriety of a particular drug regimen. "The injection of a third-party in the form of a pharmacist into the physician-patient relationship could undercut the effectiveness of the ongoing medical treatment." Ingram v. Hook's Drugs, 476 N.E.2d at 887; *see also* Allberry v. Parkmor Drug, 834 N.E.2d at 202 (in finding no duty to warn, the court declined to follow the minority or jurisdictions that have imposed a duty on pharmacies that goes beyond merely filing prescriptions accurately).Unless special circumstances exist alerting the pharmacist to an adverse drug interaction, sound policy reasons exist for not imposing a duty requiring pharmacists to question the physician's judgment.

Finally, the concern over health care costs that might result from imposing new duties on pharmacists is also a valid public policy consideration. A duty to check for incompatible prescriptions would require pharmacies to install a computerized information system that records a customer's previous prescriptions filled at any of their stores. If the pharmacy notices a potential interaction with any of the customer's previous prescriptions, it would either have to call the customer's physician or conduct research to determine whether or not to fill the prescription. This would likely increase the operational costs to pharmacies and the cost of prescription drugs in general. All of this might be a good thing, and a

legislature might choose to require it. But nothing persuades this court that the Indiana Supreme Court would so hold.

Consideration of the three pertinent factors — the relationship between the parties, foreseeability of the harm, and public policy concerns — convince this court that Walgreens had no duty to refuse to refill Ms. Bobay's prescription under the circumstances in this case.

The Bobays cite to Shidler v. CVS Pharm., No. 2:05-CV-209 CAN, 2007 WL 601748 (N.D. Ind. Feb. 20, 2007), in support of their argument that Walgreens had a general duty of reasonable care to the Bobays to refrain from filling Ms. Bobay's prescriptions. In Shidler v. CVS, the court addressed whether the pharmacist owed a duty to refrain from filling a prescription that the physician had mistakenly written for a dose that exceeded the recommended quantity. The pharmacist recognized that the dosage appeared high and the CVS computer flagged the prescription for this reason. Id. at *1. The court reasoned that this case wasn't a duty to warn case as in Ingram v. Hook's Drugs, but rather, the issue was whether the pharmacist had a reasonable duty of care to either check with the doctor who wrote the prescription, do more research on the prescription strength, or refuse to fill the prescription in the patient's best interest. Id. at *2. The court held that a duty existed, but found in the pharmacy's favor because the plaintiff didn't provide expert testimony to establish the requisite standard of care or breach. Id.

In accordance with the holding in Shidler v. CMS, when a pharmacy is alerted to a possible error in the prescription, it has a duty to take action to prevent harm to the customer. There is no evidence, though, that Walgreens was aware or even should have been aware that Ms. Bobay was taking incompatible prescriptions. *See* Saukas v. Walker Street Pharm., Inc., No. 260560, 2005 WL 1846289, at \*2 (Mich. Ct. App. August 4, 2005) (unpublished) (finding that the pharmacist had no duty to discover that the customer's prescription was incompatible with another medication she was taking where the pharmacy's records indicated that the customer had discontinued use of the other medication six months earlier; the pharmacist had no duty to inquire about or monitor the plaintiff's drug history); *compare* Brienze v. Casserly, No. 01-1655-C, 2003 WL 23018810, at \*2 (Mass. Super. Ct. Dec. 19, 2003) (unpublished) (finding a duty where the pharmacy had filled both prescriptions, knew that the customer was taking both prescriptions, and was aware of potentially adverse interaction between the medications).

"[C]ourts holding that pharmacists owe their customers a duty beyond accurately filling prescriptions do so based on the presence of additional factors, such as known contraindications" alerting the pharmacist of a potential problem. Deed v. Walgreen Co., 927 A.2d 1001, 1003 (Conn. Super. Ct. 2007) (*citing* Morgan v. Wal-Mart Stores, 30 S.W.3d 455, 466 (Tex. App. 2000)); *see also* McKee v. Am. Home Products Corp., 782 P.2d 1045, 1053 (Wash. 1989) (finding no duty to warn, but agreeing that "pharmacists should have a duty to be alert for patent

errors in prescriptions, for example: obvious lethal dosages, inadequacies in the instructions, *known* contraindications, or incompatible prescriptions, and to take corrective measures.") (footnotes omitted)). In absence of such special circumstances, courts have found that no duty exists between a pharmacist and the customer. <u>Deed v. Walgreen</u>, 927 A.2d at 1004 (noting that where the pharmacy had no superior knowledge to the customer, it was the customer's, not the pharmacist's, duty to inform her physician of the drugs she was taking so that her physician could decide if they were compatible).

The record in this case doesn't contain special circumstances establishing a duty. Ms. Bobay filled one prescription for Cyclosporine in May 2004 at a Walgreens' pharmacy in Nebraska. In April and May 2005, she filled prescriptions for Gemfibrozil and Vytorin at a Walgreens' pharmacy in Indiana. There is no evidence in the record to infer that Ms. Bobay informed the pharmacist that she was still taking Cyclosporine, that the pharmacy had this information readily available, or that the pharmacist was otherwise aware of Ms. Bobay's previous prescription. Requiring the pharmacy to review customers' previous prescriptions for potential adverse medications when no special circumstances exist alerting the pharmacist of such risks would overly interfere with the patient-physician relationship and require the pharmacist to question the physician's judgment. The

16

court therefore finds no duty to refrain from filling the prescriptions under the circumstances in this case.[1]

CONCLUSION

After reconsideration and for the reasons stated above, the court finds in favor of Walgreens on different grounds.

SO ORDERED.

ENTERED: June 30, 2009

                                            /s/ Robert L. Miller, Jr.
                                            Chief Judge
                                            United States District Court

---

[1]Walgreens addressed the issue of assumption of duty in its reply brief in support of its motion for summary judgment, but indicated that the Bobays haven't overtly presented this argument. Indeed, the Bobays don't expressly set forth the claim of assumption of duty in their amended complaint, nor do they present this argument in their response brief. While the Bobays present facts relevant to the assumption of duty, they have waived this claim by not asserting it in their response brief. *See* Palmer v. Marion County, 327 F.3d 588, 597-598 (7th Cir. 2003) (claims not addressed in a summary judgment opposition brief are abandoned); Berry v. Delta Airlines, Inc., 260 F.3d 803, 810 (7th Cir. 2001) (non-moving party's failure to raise issue in response resulted in waiver).